J-A18037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.N., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 258 WDA 2026 |

Appeal from the Order Entered January 28, 2026
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000035-2025

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED:  August 3, 2026**

In this dependency proceeding, T.N. ("Father") appeals *pro se* from the permanency review order changing the permanency goal for his minor child, Z.B. (born in March 2025), from reunification to adoption.  After careful review, we remand for further proceedings.

Given our disposition, a detailed recitation of the factual and procedural history of this matter is unnecessary.  Instead, we briefly note that the record reflects the following.  Father and S.B. ("Mother") are the biological parents of Z.B.  Mother was married to another man at the time Z.B. was conceived; thus, Z.B.'s paternity was in question.  At the time of Z.B.'s birth, Mother tested positive for numerous illicit substances, resulting in a referral to the Erie County Office of Children and Youth ("the Agency").  The Agency sought and obtained emergency protective custody of Z.B.  The Juvenile Court conducted a shelter care hearing on March 10, 2025.  ***See*** Trial Court Opinion,

4/15/25, at 1. No transcript of this proceeding appears in the certified record; however, we discern that Father was not present at this hearing. ***See id***. at 2 (wherein the juvenile court noted that "[Father] was not present during the hearing as he arrived at the courthouse after the hearing concluded").

There is no indication in the certified record that Father was advised of his right to counsel prior to the shelter care hearing, as required by 42 Pa.C.S.A. § 6332(a). Rather, Father was first informed of his right to counsel in a notice filed on March 11, 2025, the day after the shelter care hearing. ***See*** Notice for Adjudicatory/Disposition Hearing, 3/11/25, at 1 (unpaginated) (providing that "Parents may have their own attorneys. If you do not have an attorney or cannot afford one, you may contact the office below to find out where you can receive legal help."). That same day, the Agency filed a petition seeking to adjudicate Z.B. dependent. ***See*** Dependency Petition, 3/11/25, at 1-9. On March 13, 2025, the juvenile court filed a shelter care order confirming Z.B.'s placement. Z.B. was placed in kinship care, where he has remained.

On April 7, 2025, the juvenile court held an adjudicatory hearing concerning the Agency's dependency petition. Father was present and indicated that he had retained private counsel, Anthony Rodriques, Esquire ("Attorney Rodriques"), to represent him. ***See*** N.T., 4/7/25, at 4. However, Attorney Rodriques was not present at the adjudicatory hearing, and Father explained that he did not timely inform his counsel of the adjudicatory hearing.

*See id*. at 6-10. The juvenile court proceeded with the hearing and, ultimately, adjudicated Z.B. dependent. *See* Dispositional Order, 4/8/25, at 1-4. This order established Z.B.'s primary permanency goal as reunification with a concurrent goal of adoption. *See id*. at 2. Father did not appeal this determination.

Thereafter, the juvenile court held regular permanency review hearings. At the first such hearing on June 23, 2025, Father was represented by a different attorney, Patrick William Kelley, Esquire. *See* N.T., 6/23/25, at 3; *see also* Permanency Review Order, 6/24/25, at 1. Attorney Kelley, however, did not appear. Instead, a further substitute attorney, Kelsey Sheely, Esquire, represented Father. *See* N.T., 6/23/25, at 3. None of the attorneys identified as Father's counsel successfully filed formal entries of appearance.[1]

Attorney Rodriquez subsequently represented Father at permanency review hearings on October 1, 2025, October 28, 2025, and January 21, 2026. *See* N.T., 1/21/26, at 2; N.T., 10/28/25, at 3; N.T., 10/1/25, at 3. In November 2025, Father requested that the Agency communicate with him exclusively through Attorney Rodriques. *See* N.T., 1/21/26, at 8-9. Thereafter, the certified record suggests that Attorney Rodriques failed to consistently communicate with the Agency. *See id*. at 79.

---

[1] Attorney Rodriques erroneously entered his appearance in a closed termination of parental rights case pertaining to a different child of Father's who had previously been adopted. *See* N.T., 4/7/25, at 5.

Prior to the January 21, 2026 hearing, the Agency filed a petition to establish Z.B.'s sole permanency goal as adoption. *See* Motion to Change Permanency Goal, 1/7/26, at ¶¶ 1-8. On January 26, 2026, the juvenile court filed an order granting the Agency's request and established Z.B.'s sole permanency goal as adoption. *See* Permanency Review Order, 1/26/26, at 2. On February 2, 2026, Attorney Rodriques filed a motion for reconsideration on behalf of Father, which the juvenile court denied. *See* Order, 2/4/26, at 1 (unpaginated).

On February 11, 2026, Attorney Rodrigues filed a motion to withdraw as Father's counsel. In its entirety, this motion provided, as follows:

> Now [c]omes the undersigned, Anthony Rodriques, Esquire, requesting leave of the court to withdraw as counsel from the above-captioned case, and represents:
>
>   1. The undersigned was retained by [Father], the biological father of [Child], a child adjudicated dependent.
>
>   2. The undersigned was retained to represent [Father] during two hearings.
>
>   3. The undersigned has represented [Father] during two hearings.
>
>   4. [Father] consents to the filing of this motion.
>
> WHEREFORE, for the foregoing reasons, the undersigned respectfully requests leave of the court to withdraw as counsel for [Father].

Motion to Withdraw as Counsel, 2/11/26, at ¶¶ 1-4. The certificate of service indicated that Attorney Rodriques served Father "by text." *Id*. at 3 (unpaginated).

- 4 -

On February 17, 2026, Father timely filed a *pro se* notice of appeal.[2] In an order dated the same day, but filed on February 18, 2026, the juvenile court summarily granted Attorney Rodriques's request to withdraw. **See** Order, 2/18/26, at 1 (unpaginated). On February 23, 2026, the juvenile court ordered Father to file a concise statement of errors complained of on appeal within twenty-one days of the entry of the order. Father filed a motion seeking an extension of time to file his concise statement, which the juvenile court granted. On March 20, 2026, Father timely filed his *pro se* concise statement of errors.[3] Therein, Father alleged that the juvenile court erred by "proceeding under circumstances" wherein he lacked counsel "without conducting a proper waiver of counsel colloquy." Concise Statement of Errors, 3/20/26, at ¶ 15.

---

[2] Father was still technically represented by Attorney Rodriques when he timely filed his *pro se* notice of appeal, as the court had not yet ruled on counsel's motion to withdraw. **See** Pa.R.J.C.P. 1150 at cmt. (providing that "Counsel's obligation to represent a party, whether as retained or appointed counsel, remains until leave to withdraw is granted by the court"); **see also** Pa.R.A.P. 902(b)(1).

[3] Although Father filed a timely notice of appeal, he failed to concurrently file his concise statement as required by Pa.R.A.P. 1925(a)(2)(i). This oversight resulted "in a defective notice of appeal" which this Court addresses "on a case by case basis." **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009). Since he subsequently complied with the juvenile court's order directing him to file a concise statement, we will address the merits of this appeal. **See In re Adopt. of Z.S.H.G.**, 34 A.3d 1283, 1286 (Pa. Super. 2011).

In his brief to this Court, Father casts significant doubt upon the bare allegations contained in Attorney Rodriques's motion to withdraw.[4]  Rather than confirming his supposed consent, Father asserts that Attorney Rodriques ceased representing Father because he allegedly did "not have sufficient time to prepare and submit the appellate brief necessary to protect [Father's] rights in this matter."  Father's Brief at 3 (unpaginated).  Thus, Father requests that we formally permit him to proceed *pro se* or, alternatively, permit the appointment of "substitute counsel" and order "supplemental briefing" to prevent waiver of Father's "constitutional" rights.  *Id*.

Father's arguments raise significant questions regarding his ongoing entitlement to legal representation.  The Juvenile Act specifically provides parents with a right to counsel in dependency cases, as follows: "[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him."  42 Pa.C.S.A. § 6337; *see also Matter of J.P.*, 573 A.2d 1057, 1061 (Pa. Super. 1990) (discussing the constitutional basis of right to counsel in juvenile

---

[4]  Father's *pro se* brief suffers from various deficiencies under the Rules of Appellate Procedure.  *See generally* Pa.R.A.P. 2101-2176.  It is within this Court's authority to quash or dismiss appeals based upon "substantial" defects in an appellate brief.  Pa.R.A.P. 2101.  We decline, however, to quash since Father's drafting errors have not prejudiced our review.  *See Fulano v. Fanjul Corp.*, 236 A.3d 1, 12 (Pa. Super. 2020) (declining to quash appeal where briefing defects did not "substantially" impede this Court's review).

proceedings). Moreover, both juveniles and adults alike have a constitutional right to appeal from the holdings of the juvenile court. **See In Int. of A.P.**, 617 A.2d 764, 766 (Pa. Super. 1992) (*en banc*). Finally, claims concerning a litigant's entitlement to counsel are cognizable when raised for the first time in an appeal that lies from, *inter alia*, a "dependency" order. **In re N.B.**, 817 A.2d 530, 535-36 (Pa. Super. 2003); **see also**, **e.g.**, **J.P.**, 573 A.2d at 1061.

Under these circumstances, Father has adequately preserved and raised a challenge to the procedure followed by the juvenile court in permitting Attorney Rodriques to withdraw, thereby forcing Father to represent himself *pro se* in this appeal out of sheer necessity. Our standard of review concerning an alleged denial of a litigant's constitutional right to legal counsel is *de novo* and our scope of review in such matters is plenary. **See Commonwealth v. McLendon**, 293 A.3d 658, 666 (Pa. Super. 2023).

Upon reviewing the certified record in view of Father's arguments, we discern two primary concerns: (1) the juvenile court's holding that permitted Attorney Rodriques to withdraw without sufficient cause; and (2) Father proceeding *pro se* without adequately waiving his right to counsel. We will begin our analysis by addressing Attorney Rodriques's withdrawal.

The Pennsylvania Rules of Juvenile Court Procedure ("the Rules") only permit counsel to withdraw under two limited circumstances: (1) by order of the court for "good cause" shown; or (2) if replacement counsel has entered

an appearance. Pa.R.J.C.P. 1150(C)(1)(a)-(b).[5, 6] The commentary to Rule

1150 further clarifies the considerations assigned to the juvenile court:

> The court ***is to make a determination of the status of the case before permitting counsel to withdraw.*** Although there are many factors considered by the court in determining whether there is good cause to permit the withdrawal of counsel, when granting leave, ***the court should determine if new counsel needs to be appointed, and that the change in attorneys will not delay the proceedings or prejudice the party***, particularly concerning time limits.

***Id***. at Comment (emphases added). Trial courts are also extolled to consider

the parameters of any fee agreements and the "economics" of continued

representation. ***See Commonwealth v. Roman***, 549 A.2d 1320, 1322 (Pa.

Super. 1988). Overall, there are no "brightline rules" governing whether a

---

[5] No citable case law of this Court has yet interpreted the provisions of Rule 1150. ***See*** Pa.R.A.P. 126 (indicating that we may only cite unpublished memorandums filed "after May 1, 2019" for "persuasive value"); ***cf***. ***In re G.L.P.***, 3485 EDA 2014, 2015 WL 6696904, at *1-*7 (Pa. Super. 2015) (unpublished memorandum). Thus, this discussion is one of first impression.

[6] Father's arguments also implicate well-established principles governing statutory construction of the Rules. ***See*** Pa.R.J.C.P. 101(c) ("In the construction of the Pennsylvania Rules of Juvenile Court Procedure, the principles set forth in [the Rules] 104 to 115 shall be observed"). Among those rules of construction is the presumption that "[t]he Supreme Court intends a rule to be construed to secure the just, speedy, and inexpensive determination of every action or proceeding to which it is applicable." Pa.R.J.A. 109(b). Further, "[e]very rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.J.A. 108(b). Also, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and [those with] peculiar [] meaning or as are expressly defined by rule shall be construed according to such peculiar [] or express meaning or definition." Pa.R.J.A. 106(a).

trial court has abused its discretion in adjudicating a petition to withdraw as counsel. The resolution of such a question "turns upon a case by case analysis with particular attention to the reasons given by the trial court" at the time the request is adjudicated. ***Commonwealth v. Magee***, 177 A.3d 315, 323 (Pa. Super. 2017) (emphasis added).

Since Attorney Rodriques was not replaced by substitute counsel and no other attorney entered an appearance on Father's behalf, Attorney Rodriques was required to demonstrate "good cause" for his withdrawal. ***See*** Pa.R.J.C.P. 1150(1)(a). As noted above, Attorney Rodriques only asserted two grounds for withdrawal: (1) that he had only been retained to represent Father at two hearings; and (2) that Father consented to his withdrawal. ***See*** Motion to Withdraw as Counsel, 2/11/26, at ¶¶ 1-4. Upon review, neither of these alleged bases for withdrawal find any support in the certified record.

As detailed above, Father retained Attorney Rodriques as his attorney at the beginning of these proceedings in June 2025. From the transcripts, alone, we can confirm Attorney Rodriques went on to represent Father in at least ***three*** separate hearings before the juvenile court. ***See*** N.T., 1/21/26, at 2; N.T., 10/28/25, at 3; N.T., 10/1/25, at 3. Moreover, the transcripts also indicate that Attorney Rodriques served as Father's sole point of contact with the Agency beginning in November 2025. ***See*** N.T., 1/21/26, at 8-9. Attorney Rodriques also prepared and filed a motion for reconsideration on Father's behalf. ***See*** Motion to Reconsider, 2/2/26, at ¶¶ 1-5. Finally, the

juvenile court docket reveals that Attorney Rodriques was served with filings in this case in his capacity as Father's attorney. Given the complete lack of record support, we cannot countenance the juvenile court's conclusion that Attorney Rodriques was permitted to withdraw since his representation of Father was limited in scope and concluded.

We further question whether Father consented to Attorney Rodriques's withdrawal. Father's averments on this issue make no mention of his consent, but instead assert that Attorney Rodriques withdrew due to personal time constraints. *See* Father's Brief at 3 (unpaginated) (wherein Father states "counsel has informed [Father] that counsel does not have sufficient time to prepare and submit the appellate brief necessary to protect [Father's] rights in this matter"). Given Father's silence regarding his consent or agreement, we also find no arguable support for Attorney Rodriques's contention that Father consented to his withdrawal.

Finally, we note that the juvenile court offered no additional explanation regarding the alleged "good cause" for withdrawal aside from validating the grounds asserted in Father's motion. *See* Order, 2/18/26, at 1 (unpaginated). In its entirety, this order reads as follows: "AND NOW, this 17th day of February 2026, upon consideration of the attached [m]otion to [w]ithdraw, it is hereby ordered that said motion is GRANTED." *Id*. Moreover, given that counsel's request to withdraw occurred in the midst of the critical deadlines associated with Father's appeal, we are forced to

question whether the juvenile court properly considered the elements identified by the commentary to Rule 1150, *i.e.*, deadlines, delay, and prejudice. Based upon the foregoing, we hold the juvenile court abused its discretion by permitting Attorney Rodriques to withdraw under Rule 1150(1)(a) for "good cause" given the absence of any basis supported by the record. Thus, we vacate the order granting Attorney Rodriques leave to withdraw.

We now consider the propriety of permitting Father to proceed *pro se* without a clear waiver of his right to legal counsel. The Rules provide that a party can only waive their right to counsel if: (1) the waiver is knowingly, intelligently, and voluntarily made; and (2) the court conducts a colloquy with the party on the record. **See** Pa.R.J.C.P. 1152(B)(1)-(2). The commentary to Rule 1152 further provides a list of "minimum" inquiries that the juvenile court is "recommended" to make during the on-the-record colloquy mandated by Rule 1152(B)(2), which include:

(1) Whether the party understands the right to be represented by counsel;

(2) Whether the party understands the nature of the dependency allegations and the elements of each of those allegations;

(3) Whether the party is aware of the dispositions and placements that may be imposed by the court, including foster care placement and adoption;

(4) Whether the party understands that if he or she waives the right to counsel, he or she will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(5) Whether the party understands that counsel may be better suited to defend the dependency allegations; and

(6) Whether the party understands that the party has many rights that, if not timely asserted, may be lost permanently; and if errors occur and are not timely objected to, or otherwise timely raised by the party, the ability to correct these errors may be lost permanently.

*Id*. at Comment.

By permitting Attorney Rodriques to withdraw without substitute counsel, the juvenile court *de facto* required Father to proceed *pro se* without following the requirements of Rule 1152. The juvenile court made no effort to assure that Father had knowingly, intelligently, and voluntarily elected to represent himself. ***Cf.*** Pa.R.J.C.P. 1152(B)(1). Furthermore, the juvenile court did not conduct an on-the-record colloquy confirming the validity of Father's waiver. ***Cf.*** Pa.R.J.C.P. 1152(B)(2). This Court has remanded under analogous circumstances to permit proper waiver of counsel procedures. ***See Int. of M.D.***, 1523 MDA 2018, 2019 WL 2305779, at *2 (Pa. Super. May 30, 2019) (unpublished memorandum) (remanding "to clarify whether proper procedures were followed regarding the parent's right to counsel" where the party began proceeding *pro se* "with no explanation on the record as to when or how [the] parent waived the right to counsel") (citing Pa.R.J.C.P. 1152(B)); ***see also Int. of Michael Y.***, 530 A.2d 115, 121 (Pa. Super. 1987) (holding that "the mandate of Section 6337 of the Juvenile Act that the court

shall ascertain whether a party desires counsel [is] too strong[] to permit us to accept . . . that silence acts as a waiver").

Based upon the foregoing, we hold that the juvenile court erred and abused its discretion by failing to abide by the requirements of Rule 1152(B)(1)-(2).  As such, we remand for further proceedings consistent with this writing as follows.  Given our *vacatur* of the order permitting Attorney Rodriques to withdraw, his representation of Father will continue until: (1) he establishes adequate grounds for withdrawal pursuant to Rule 1150; or (2) Father waives his right to counsel under Rule 1152.  Within thirty (30) days of the date this memorandum is filed, we direct the juvenile court to conduct an on-the-record colloquy addressing, at a minimum, the recommended points of inquiry identified by the commentary to Rule 1152, and to file the resulting transcript with this Court.  Upon receipt of the supplemental transcript, we direct this Court's Prothonotary to issue a new briefing schedule to afford the parties the opportunity to address any change in Father's representation and, thus, the arguments being asserted.[7]  Finally, upon receipt of all necessary filings and briefs, the Prothonotary shall list this appeal before the next available argument panel in the Western District.

---

[7] Alternatively, the parties may choose to notify this Court that they will instead rely on the briefs previously submitted.

Case remanded for further proceedings consistent with this decision. Superior Court jurisdiction retained. Case continued to a future argument panel in light of the necessity for a new briefing schedule.